JOHN V. PUTNAM in equity, *vs.* WILLIAM H. BURRILL and another.

*Costs and Practice in Equity.    When case will be sent to a master.*

Where one brings a bill in equity for a release and conveyance of lands from the administrator of an insolvent estate, on the ground of a resulting trust subsisting in the intestate, unless the administrator's answer admits such knowledge of the facts and of the state of the accounts between the plaintiff and the deceased in relation to the trust estate, as will be sufficient to justify an immediate and absolute decree of conveyance, the case must go to a master upon whose report the character of the decree will depend.

If the complainant is found to have paid and accounted for his proportion of all dues and receipts, he will be held entitled to a decree for a release and conveyance, without costs to either party.

BILL IN EQUITY.

The complainant seeks to obtain a conveyance of certain land described in his bill, which is brought against the administrator

and a minor heir at law of the late James White, in whose name the record-title to the premises stood at the time of his death.

In October, 1851, James White and John V. Putnam entered into a written contract to jointly purchase a half township of land in Aroostook County, belonging to the trustees of Belfast Academy, and to hold the same in equal shares, as co-tenants. The last payment was made in 1853, and thereupon, upon the suggestion of White, that it would be for their mutual advantage, the deed was made to him alone, although there was no change of their real interests, each having put an equal amount into the land. No controversy ever arose between these parties from that time up to that of the sudden death of Mr. White, on the twenty-fourth day of December, 1870; since which time all of his heirs who have attained their majority have released to the complainant, but the administrator was unwilling to do so without a decree of the court to that effect, and submitted the question for determination, not denying the statements of the bill in his answer, but admitting their truth, so far as the purchase of and interest in the land were concerned, professing ignorance as to White's alleged readiness to convey at the time of his decease, and adding that Mr. Putnam had been in charge of the premises in question, receiving the rents and profits, during the joint ownership; and whether or not these had been equally divided, or aught yet remained due to Mr. White's representative, the respondent was not informed. The minor heir, by his guardian, *ad litem*, expressly admitted the truth of the complainant's allegations.

*C. M. Herrin*, for the complainant.

*L. Powers*, for the respondents.

BARROWS, J. The plaintiff alleges in his bill that in October, 1851, he and James White, since deceased, upon whose estate the respondent Burrill administers, entered into a written agreement to purchase and hold, as tenants in common, equally interested, certain lands in Ludlow, in the county of Aroostook, particularly described in

the bill and in certain conveyances to which reference is made; that the purchase was made "in pursuance of said agreement, the plaintiff and said White each furnishing one-half of the purchase-money; that it was thought expedient and "most advantageous for the management, control and disposal of the lands," that the deed should be taken in the name of said White alone, and it was so made; that the plaintiff, however, in fact managed the joint property, and sold portions of the lands on their joint account, procuring purchasers of lots, receiving payments therefor, and paying over to said White his half of the proceeds and income, and having stated settlements with said White, which he offers in his bill to produce; that White was ready and willing to convey to plaintiff at any time his undivided half of the portions remaining unsold, but was prevented by his unexpected death, which occurred Dec. 24, 1870; that since the death of said White, his heirs, with the exception of the one named as co-respondent with the administrator in this bill, have conveyed all their interest in said lands, to Russell H. White, one of their number, who recognizing the right of the plaintiff to an undivided half of the unsold parcels, released and conveyed the interest of said heirs therein to him. The co-respondent is a minor, living out of the State, and represented here by a guardian *ad litem.* White's estate proves insolvent, and the administrator refuses to convey to the plaintiff without a decree from the court.

The answers of both the respondents, admit upon information and belief, the truth of the allegations in the bill relating to the agreement, the purchase, and management of the property, in a manner which would create a resulting trust in White, in favor of the plaintiff as to an undivided half of the unsold land. But the administrator says nothing in his answer to indicate that he has any knowledge of the state of the accounts between the plaintiff and White in relation to the common property, and he disclaims any knowledge that White was willing to convey at the time of his last sickness, as alleged in the bill, though he admits this may have been the fact.

White's creditors, whom the administrator represents, seem more concerned to scrutinize the plaintiff's claim with care, than the heirs, who take nothing if the estate finally proves insolvent. The settlements with White, which the plaintiff offers to produce, are not before us. To protect the interest which White's creditors may possibly have in the premises, the case must go to a master for the examination of the accounts and settlements referred to in the bill. Upon the coming in of his report, if it appear thereby, that the plaintiff has paid and accounted for all he ought to pay and account for, a decree will be made for the release and conveyance requested, without costs to either party.

*Bill sustained ; master to be appointed.*

APPLETON, C. J., CUTTING, WALTON, DANFORTH, and PETERS, JJ., concurred.